**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LABORERS' PENSION FUND, and** ) | | |
| **LABORERS' WELFARE FUND OF THE** ) | | |
| **HEALTH AND WELFARE DEPARTMENT** ) | | |
| **OF THE CONSTRUCTION AND GENERAL** ) | | |
| **LABORERS' DISTRICT COUNCIL OF** ) | | |
| **CHICAGO AND VICINITY, and LABORERS'** ) | | |
| **DISTRICT COUNCIL RETIREE HEALTH** ) | | |
| **AND WELFARE FUND, and CATHY** ) | | |
| **WENSKUS, as Administrator of the** ) | | |
| **Funds,** ) | | |
| **Plaintiffs,** ) | **Case No.** | 19-cv-7263 |
| **v.** ) | | |
| ) | **Judge** | |
| **BB CONSTRUCTION ENTERPRISE, INC., an** ) | | |
| **Illinois corporation and SANTIAGO RIVOIR,** ) | | |
| **individually** ) | | |
| ) | | |
| **Defendant.** ) | | |

## COMPLAINT

Plaintiffs, Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare

Department of the Construction and General Laborers' District Council of Chicago and Vicinity,

the Chicago Laborers' District Council Retiree Health and Welfare Fund, and Catherine

Wenskus, not individually, but as Administrator of the Funds (hereinafter collectively "Funds"),

by their attorneys, Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska, Katherine C.V.

Mosenson, and Sara Schumann, for their Complaint against Defendants BB Construction

Enterprise, Inc., an Illinois corporation  and Santiago Rivoir, individually, state:

## COUNT I

### (Failure To Pay Employee Benefit Contributions to Funds as Revealed by an Audit)

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee

Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as

amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, 28 U.S.C. § 1367, and federal common law.  The

Court has jurisdiction for any pendent state law contract claims pursuant to 28 U.S.C.  §1367(a).

2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2),

and 28 U.S.C. §1391 (a) and (b).

3.      The Funds are multiemployer benefit plans within the meanings of Sections 3(3)

and 3(37) of ERISA.  29 U.S.C. §1002(3) and 37(A).  They are established and maintained

pursuant to their respective Agreements and Declarations of Trust in accordance with Section

302(c)(5) of the LMRA.  29 U.S.C. § 186(c)(5).  The Funds have offices and conduct business

within this District.

4.      Plaintiff Catherine Wenskus (hereinafter "Wenskus") is the Administrator of the

Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the

collection of employer contributions owed to the Funds and to the Construction and General

District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the

Funds of amounts which have been or are required to be withheld from the wages of employees

in payment of Union dues for transmittal to the Construction and General Laborers' District

Council of Chicago and Vicinity (the "Union").  With respect to such matters, Wenskus is a

fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C.

§1002(21)(A).

5.      Defendant BB Construction Enterprise, Inc. (hereinafter the "Company"), is an

Illinois corporation.  The Company does business within this District and was at all times

relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6.    Defendant Santiago Rivoir ("Rivoir") is an individual who is the Owner of the Company and resides in and operates his Company in the District.

7.    The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and the Company are parties to collective bargaining agreements, the most recent of which became effective June 1, 2017.  ("Agreement").  (A copy of the "short form" Agreement entered into between the Union and the Company which adopts and incorporates Master Agreements between the Union and various employer associations, and also binds the Company to the Funds' respective Agreements and Declarations of Trust and the Agreements and Declarations of Trusts of the various Funds listed in paragraph 8 below, is attached hereto as Exhibit A.)

8.    The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent

Construction Association ("CAICA") to act as an agent in the collection of contributions due to those Funds.

9. The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, retiree health and welfare benefits, and benefits for the training fund, and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages plus interest.

10. The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance. In accordance with this obligation, the Company submitted its books and records for a fringe benefit and dues compliance audit for the period August 23, 2018 to March 31, 2019.

11. Prior to the audit being completed the Company entered into an Installment Note ("Note") with the Funds on or about May 23, 2019. The Note covered past due fringe benefit and dues contributions owed by the Company for October 2018 through March 2019. The Note amount was based upon fringe benefit hours reported by the Company. A true and accurate copy of the Note is attached hereto as Exhibit B.

12. Simultaneously with the execution of the Note, Defendant Rivoir signed a Guaranty of Payment and Indemnification ("Guaranty") on or about May 23, 2019, individually

guaranteeing payment of the amounts due under the Note to the Funds. A true and accurate copy of the Guaranty is attached hereto as Exhibit C. Paragraph 1 of the Guaranty provides in relevant part:

> The Guarantor also agrees to be personally liable for all monthly benefit contributions and/or union dues owed from the Company to the Funds, the District Council and all ancillary funds that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs.

13. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Note and the Guaranty, the Company performed covered work during the audit period of August 23, 2018 through March 31, 2019 but failed to pay the Funds all required contributions. According to the Funds' Audit the Company:

(a) failed to report and pay contributions in the amount of $301.68 owed to Funds for the audit period August 23, 2018 through March 31, 2019, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b) failed to report and pay contributions in the amount of $243.60 owed to Funds of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the audit period of August 23, 2018 through March 31, 2019, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c) failed to report and pay contributions in the amount of $114.00 owed to Laborers' District Council Retiree Health and Welfare Fund of the Construction and General Laborers' District Council of Chicago and Vicinity for the audit period of August 23, 2018 through March

31, 2019, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(d)     failed to report and pay contributions in the amount of $17.28 owed  Laborers' Training Fund for the audit period of August 23, 2018 through March 31, 2019, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(e)     failed to report and pay contributions in the amount of $4.08 owed to Laborers' District Council Labor Management Committee Cooperative ("LMCC") for the audit period of August 23, 2018 through March 31, 2019, thereby depriving the LMCC of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(f)     failed to report and pay contributions in the amount of $2.88  owed to Illinois Environmental Contractors Association Industry Education Fund ("IECA") for the audit period of August 23, 2018 through March 31, 2019, thereby depriving the IECA  of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries; and

(g)     failed to report and pay contributions in the amount of $1.68 owed to Laborers' Employers' Cooperation and Education Trust ("LECET") for the audit period of August 23, 2018 through March 31, 2019, thereby depriving the LECET of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries.

14.     A true and accurate copy of the Funds' Audit for the period August 23, 2018 through March 31, 2019 is attached as Exhibit D.

15.     By virtue of the Exhibit C Guaranty, Rivoir is personally liable for all audit findings including liquidated damages, interest, audit costs and attorney fees.

16.     The Company and Rivoir's failure to submit payment upon an audit to which it submitted its books and records violate Section 515 of ERISA, 29 U.S.C. §1145.

17.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, the Note and Guaranty, the Company and Rivoir are liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, accumulative liquidated damages on the late paid contributions, audit costs, reasonable attorneys' fees and court costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiff Funds respectfully request that this Court:

a.     enter judgment in sum certain in favor of the Funds and against Defendants BB Construction Enterprise, Inc., and Santiago Rivoir, jointly and severally, on the amounts due and owing pursuant to the audit for the period of August 23, 2018 through March 31, 2019 plus interest, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

b.     awarding Funds' any further legal and equitable relief as the Court deems appropriate.

## COUNT II

**(Failure to Pay Union Dues Revealed as Delinquent Pursuant to an Audit)**

18.     The Funds re-allege paragraphs 1 through 15 of Count I as though fully set forth herein.

19.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered employees.

20.     Notwithstanding the obligations imposed by the Agreement, the audit revealed the Company performed covered work during the audit period of August 23, 2018 through March 31, 2019, and failed to withhold and/or submit payment of $39.35 in union dues that were or should have been withheld from the wages of employees during that period of time thereby depriving the Union of information and income.

21.     Pursuant to the Agreement, the Funds' respective Trust Agreements, the Note and Guaranty, the Company and Rivoir owe the due contribution findings contained in the audit, liquidated damages on all paid late or unpaid dues as revealed by the audit for the period of August 23, 2018 through March 31, 2019, plus audit costs, and reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiff Funds respectfully request this Court enter a judgment in favor of Plaintiff Funds and against Defendant BB Construction Enterprise, Inc., and Santiago Rivoir, jointly and severally, on the amounts due and owing pursuant to the audit for the period of August 23, 2018 through March 31, 2019, including dues, liquidated damages, audit costs, and Funds reasonable attorneys' fees and costs; and

b.      awarding Plaintiff Funds any further legal and equitable relief as the Court deems appropriate.

## COUNT III

### (Default on Installment Note)

22.      The Funds incorporate and re-allege the allegations contained in Paragraphs 1 through 21 of this Complaint.

23.      The Company and Rivoir agreed to pay a total of $38,966.86 which included twelve percent (12%) interest over the course of twelve (12) months in settlement of delinquent fringe benefit and dues contributions owed to the Funds.  Commencing on July 1, 2019 and ending on June 1, 2020, the Exhibit B Note required the Company to remit monthly payments of $2,519.94 to the Funds.  (See Exhibit B, ¶ 4).

24.      On October 17, 2019, the Funds provided written notice of default to the Company and Rivoir which advised the Company and Rivoir they failed to remit the September 2019 and October 2019 Note payments and requested the default be cured by October 31, 2019. (A true and accurate copy of the notice of default is attached as Exhibit E).  The Company and Rivoir failed to cure the default.

25.      The Note provides that in the event the Company fails to cure the default within ten (10) days of the written notice of default all unpaid Note amounts shall immediately become due and payable and the Company further agrees to pay all attorneys' fees incurred by the Funds in any action to enforce the terms of the Note.  (See Exhibit B, ¶ 5).

26.      In addition, Rivior is personally liable for all amounts due on the Note as a result of executing the Exhibit C Guaranty.

27.     The Company and Rivoir's failure to remit the agreed upon Note payments deprived the Funds of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries and resulted in damage to the Funds.

28.     Allowing for all just due credits, the accelerated Note balance immediately due is $25,199.40.  A copy of the Summary of Note Payment Ledger is attached as Exhibit F.

WHEREFORE, Plaintiff Funds respectfully request that this Court:

a.     enter judgment in sum certain in favor of the Funds and against Defendants BB Construction Enterprise, Inc., and Santiago Rivoir, jointly and severally in the amount of $25,199.40 plus Plaintiffs' reasonable attorneys' fees and costs; and

b.     awarding Funds' any further legal and equitable relief as the Court deems appropriate.

November 4, 2019                                                    Laborers' Pension Fund, et al.

                                                                    By: /s/ G. Ryan Liska

G. Ryan Liska
Laborers' Pension and Welfare Funds
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1540



# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
### AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between _____ ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 76, 152, 225, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** In response to the Union's request for recognition as the majority representative of its unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA for the employees now and hereafter employed under this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its bargaining rights to any entity for purposes of multi-employer bargaining, and it hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association for purposes of multi-employer bargaining without prior written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement and all extensions hereof, and it waives any right or defenses it may have to terminate this agreement or refuse to negotiate a successor agreement based upon the number of persons employed, and it consents to enforcement of this commitment directly through any tribunal or court of competent jurisdiction.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union in its sole discretion, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Wall Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Great Lakes Contractors Association, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. **Total economic increase.** The Employer shall pay its employees a total economic increase of $2.17 per hour effective June 1, 2017; $2.24 per hour effective June 1, 2018; $2.31 per hour effective June 1, 2019; and $2.39 per hour effective June 1, 2020, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2017, the minimum wage rate shall be $41.20 per hour.

4. **Check-Off Deductions and Remittances.** The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated to the Union for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the tenth (10th) day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall pay a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue or other applicable standard.

5. **Work Jurisdiction.** This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. **Subcontracting.** The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by its duly authorized agents at all proper rates, and extends to the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, and acknowledging the bond form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. **Contract Enforcement.** All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition. In lieu of another grievance committee, provided that disaffected grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike by this Agreement or its members because of non-payment of wages and/or fringe benefit contributions, strike by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. **Termination.** This Agreement shall remain in full force and effect from June 1, 2017 (unless dated differently below) through May 31, 2021, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such timely and proper notice, the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporated herein into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement. Notwithstanding the foregoing, the Union in its sole discretion may terminate this Agreement at any time upon written notice should the Employer fail to comply with its bonding obligations or if the Employer is a joint employer with or alter ego of another entity with an outstanding delinquency to the Union's affiliated fringe benefit funds.

11. **Execution.** The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile and electronic signatures on this Agreement as if they were the original signatures.

**\* see attached Rider**

Dated: **August 23**, 20 **18**

ACCEPTED:

Laborers' Local Union No. **225**

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____

By: _____
James P. Connolly, Business Manager

By: _____
Charles LoVerde, Secretary-Treasurer

For Office Use Only: **\* IECA**

_____ (Employer)

**BB Construction Enterprise Inc.**

FEIN No.: _____

By: **Baptiste Givery    President**
(Print Name and Title)

_____ (Signature)

**4821 W 51st St.**
(Address)

**Chicago, IL 60609**
(City, State and Zip Code)

**(773) 456-9230**
(Telephone/Fax)

**bbconsenter@yahoo.com**
(Email Address)

RECEIVED AUG 24 2018

Effective June 1, 2017.    • WHITE - LOCAL UNION    • CANARY - TRUST FUND    • PINK - DISTRICT COUNCIL    • GOLD - EMPLOYER

**EXHIBIT A**

RIDER TO INDEPENDENT CONSTRUCTION INDUSTRY
COLLECTIVE BARGAINING AGREEMENT
BB CONSTRUCTION ENTERPRISE INC. – 8/23/2018

The following work bid or let prior to August 23, 2018, shall be excluded from coverage from the Independent Construction Industry Collective Bargaining Agreement (and all documents incorporate by reference therein) entered into on August 23, 2018 between BB Construction Enterprise, Inc., the Construction and General Laborers' District Council of Chicago and Vicinity and its affiliated Local No. 225:

139 S Austin Blvd
4539 S Fairfield Ave
4317 S Artesian Ave
6534 S Kolin Ave
7733 S Union Ave
5515 S Hyde Park Blvd
585 Edgemont Lane
1715-19 W North Shore
14411 Drexel Ave
1275 Burnham Ave
14302 Wallace Ave
4435 S Union Ave
4937 N California Ave

Additional work bid by the Company prior to August 23, 2018, that is not included in the above-detailed list, may be excepted from coverage provided that the work is residential in nature and is completed by no later than May 1, 2019. However, work performed at 3501 S. Pulaski, commonly known as the "Crawford Station Project," and any and all work subject to the terms of any prevailing wage law (state or federal) or subject to the terms of a Project Labor Agreement, shall not be excluded from coverage, regardless of when work on those projects was bid or let. All other terms of the Independent Construction Industry Collective Bargaining Agreement shall remain unaltered and intact.

Chicago Laborers' Local Union No. 225

_____
Anthony Cantone

BB Construction Enterprise, Inc.

_____
Santiago Rivoir, President

Construction and General Laborers' District
Council of Chicago and Vicinity

_____
James P. Connolly, Business Manager

## INSTALLMENT NOTE

This Installment Note ("Note") is made between the Laborers' Pension Fund ("Pension Fund"), the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and the Retiree Health and Welfare Fund ("Welfare Funds" or collectively the "Funds"), the parties of the first part, and B.B. Construction Enterprise, Inc, (the "Company"), the parties of the second part.

WHEREAS, the Company has at all relevant times been party to a collective bargaining agreement ("CBA") with Local 225 and the Construction and General Laborers' District Council of Chicago and Vicinity, whereunder it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund, on behalf of its covered employees, and to submit payment of all employee union dues;

WHEREAS, the Fund's alleged the Company failed to timely pay certain contributions owed to the Funds for the contribution period of October 2018 through March 2019.

WHEREAS, the Funds alleged the Company failed to remit all employee union dues to the Funds, as the designated collection agent for the Construction and General Laborers' District Council of Chicago and Vicinity, for the audit period of October 2018 through March 2019.

WHEREAS, the Company desires to pay all delinquencies owed to the Funds, to pay all union dues owed to the Construction and General Laborers' District Council of Chicago and Vicinity, together with liquidated damages, attorneys' fees, audit costs, costs and interest, as set forth below and further desires to remain current in its obligation to pay contributions to the Funds.

WHEARAS, the fringe benefit and union dues amounts set forth below for the months October 2018 through March 2019 were based solely on fringe benefit and union dues reports submitted to the Funds by the Company. The Company acknowledges it may be subject to a fringe benefit and union dues compliance audit in the future and the payment of the amounts below is solely to satisfy hours self-reported by the Company and not any future audit which may cover the months which are the subject of this Installment Note.

THE PARTIES HEREBY AGREE as follows:

1. The Company will pay $11,173.20 to the Health and Welfare Fund (comprised of $7,693.70 in delinquent contributions, $2,890.72 in liquidated damages and $588.78 in interest). The Company will pay $5,228.88 to the Retiree Health and Welfare Fund (comprised of $3,600.50 in delinquent contributions, $1,352.80 in liquidated damages and $275.58 in interest). The Company will also pay $13,837.20 to the Pension Fund (comprised of $9,528.06 in delinquent contributions, $3,579.93 and $729.21 in interest). All of these amounts shall be paid according to the schedule described below in paragraphs 3 and 4.

2. The Company will also pay $659.91 to the Training Fund (comprised of $545.76 in delinquent contributions, $109.15 in liquidated damages), $283.05 to the LECET Fund (comprised of $257.32 in delinquent contributions, $25.73 in liquidated damages), $687.41 to the LDCMC Fund (comprised of $624.92 in delinquent contributions, $62.49 in liquidated damages), $485.23 to the IECA Fund (comprised of $441.12 in delinquent contributions, $44.11 in liquidated damages) and $6,616.98 in union dues (comprised of $6,015.44 in delinquent contributions and $601.54 in liquidated damages). These delinquent amounts shall be paid in their entirety at the time the Note is signed.

3. Simultaneously with the execution of this Note, the Company will make a down payment of $8,727.58 which consists of the amounts detailed in Paragraph 2 above. The down payment shall be made payable to the "Laborers' Pension and Welfare Funds," and delivered to the attention of G. Ryan Liska at the Office of Fund Counsel, Laborers' Pension and Welfare Funds, 111 West Jackson Boulevard, Suite 1415, Chicago, Illinois 60604

4. For twelve (12) consecutive months commencing on July 1, 2019 and ending on June 1, 2020, the Company will pay $931.10 per month to the Health and Welfare Fund, $435.74 to the Retiree Health and Welfare Fund and $1,153.10 per month to the Pension Fund. The total monthly payment of $2,519.94 shall be made payable to the "Laborers' Pension and Welfare Funds" and shall be remitted to Joseph Glleran, Funds' Administrative Offices, 11465S Cermak Road, Westchester, Illinois 60154.

5. The Funds shall provide the Company with written notice of the default and provide the Company with ten (10) days to cure the default. In event the Company fails to timely cure the default all Note amounts described herein shall immediately become due and the Company further agrees to pay all attorneys' fees and costs incurred by the Funds in any action to enforce any part of this Note.



6. The Company understands and agrees that this Installment Note is based on reports submitted by the Company to the Funds and that the Funds reserve the right to conduct an audit, in accordance with the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, to determine benefit contribution compliance for the time period covered herein and further reserve the right to collect any unpaid contributions, union dues, interest, liquidated damages, and audit costs as shown on said audit.

7. Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Funds' respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note, All amounts described in paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event the Company further agrees to pay all attorneys' fees and costs incurred by the Funds in any action to enforce any part of this Note.

8. This Installment Note is conditioned on the Company staying current on its obligations to the Funds and District Council under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that the Company fails to maintain its obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but no limited to, its obligations to submit timely contribution and dues reports and to make timely contribution and dues payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

9. The Parties acknowledge and agree that any payments to the Union provided for in this Agreement fully comport with 29 U.S.C. § 186(c)(2) and that they involve the compromise, adjustment, settlement or release of a claim, complaint, grievance or dispute in the absence of fraud or duress.

10. The Company further agrees to obtain and maintain a surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA.

11. The Company shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

The Parties hereby agree to these terms by their execution hereof on the _23_ day of May 2019.

B.B. Construction Enterprise, Inc.

By: _____

Title: _President_

Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and Retiree Health and Welfare Fund.

By: _____

**FINANCIAL SCHEDULE FOR INSTALLMENT NOTE**

5/3/2019

CODE 35727     CONTRACTOR BB CONSTRUCTION ENTERPRISE INC

ASSUMPTIONS:
1.) INTEREST RATE    12.00%
2.) NUMBER OF PAYMENTS    12
3.) BEGINNING OF PERIOD PAYMENTS
4.) NO INTEREST ON ATTORNEY FEES AND AUDIT COSTS

PHONE 773-438-9830

| PERIOD | WELFARE | RETIREE WELFARE | PENSION | DUES | LOCUI/CC | LECET | TRAINING FUND | IECA | CISCO | MARBA | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Oct-18 | | | | | | | | | | | |
| Nov-18 | | | | 1,825.67 | 100.74 | 78.54 | | 134.64 | | | 2,229.55 |
| Dec-18 | | | | 2,168.19 | 228.44 | 93.24 | | 159.84 | | | 2,645.71 |
| Jan-19 | | | | 762.59 | 78.88 | 32.48 | | 55.68 | | | 929.63 |
| Feb-19 | 3,368.00 | 1,548.50 | 4,097.82 | 551.58 | 55.42 | 22.82 | 234.72 | 39.12 | | | 9,858.68 |
| Mar-19 | 3,654.00 | 1,710.00 | 4,525.20 | 584.64 | 61.20 | 25.30 | 259.20 | 43.20 | | | 10,862.64 |
| | 730.60 | 342.00 | 905.04 | 124.77 | 12.24 | 5.04 | 51.84 | 8.64 | | | 2,180.37 |
| SUB-TOTAL CONTRIBUTIONS | 7,693.70 | 3,600.50 | 9,528.06 | 6,015.44 | 624.92 | 257.32 | 545.76 | 441.12 | | | 28,706.82 |
| 10% LIQUIDATED DAMAGES | - | - | - | - | - | - | - | - | | | - |
| 20% LIQUIDATED DAMAGES | 1,538.74 | 720.10 | 1,905.61 | 601.54 | 62.49 | 25.73 | 109.15 | 44.11 | | | 733.87 |
| | | | | | | | | | | | 4,213.60 |
| ACCUMULATED LIQUIDATED DAMAGES | 1,351.98 | 632.70 | 1,674.32 | | | | | | | | 3,659.00 |
| ACCUM. INTEREST - ABOVE REPORTS | | | | | | | | | | | |
| ACCUM. INTEREST - ABOVE AUDIT | | | | | | | | | | | |
| ACCUM. INTEREST - LATE PAID RPTS. | | | | | | | | | | | |
| TOTAL BEFORE ATTY & AUDIT COSTS | 10,584.42 | 4,953.30 | 13,107.99 | 6,616.98 | 687.41 | 283.05 | 654.91 | 485.23 | - | - | |
| LESS DOWN PAYMENT | - | - | - | | | | | | | | |
| AMOUNT FINANCED | 10,584.42 | 4,953.30 | 13,107.99 | | $ 8,727.58 DUE UP-FRONT | | | | | | |
| ATTORNEY FEES AND COSTS | - | - | - | | | | | | | | |
| AUDIT COSTS | - | - | - | | | | | | | | |
| MONTHLY PAYMENT | $ 2,519.94 | 931.10 | 435.74 | 1,153.10 | | | | | | | |
| NUMBER OF PAYMENTS | | 12 | 12 | 12 | | | | | | | |
| TOTAL PAID   x 12 | | 11,173.20 | 5,228.88 | 13,837.20 | | | | | | | |
| LESS AMOUNT FINANCED | | 10,584.42 | 4,953.30 | 13,107.99 | | | | | | | |
| LESS ATTORNEY FEES AND COSTS | | - | - | - | | | | | | | |
| LESS AUDIT COSTS | | - | - | - | | | | | | | |
| EQUALS NOTE INTEREST | | 588.78 | 275.58 | 729.21 | | | | | | | |
| PLUS ACCUMULATED INTEREST | | | | | | | | | | | |
| EQUALS TOTAL INTEREST | | 588.78 | 275.58 | 729.21 | | | | | | | |
| GUARANTY AMOUNT | | 38,966.88 | | | | | | | | | |

WEL     ATTY     AUDIT
931.10
RET WEL    ATTY     AUDIT
435.74
PENS     ATTY     AUDIT
1,153.10

SUMMARY TOTALS
| | |
|---|---|
| WEL | 7,693.70 |
| WEL RET | 3,600.50 |
| PEN | 9,528.06 |
| DUES | 6,015.44 |
| LOCMC | 624.92 |
| LECET | 257.32 |
| TRAIN | 545.76 |
| CCA | 441.12 |
| MARBA | - |
| CISCO | - |
| SUBTOT | 28,706.82 |
| LIQ. DAM. | 8,666.47 |
| INT | 1,593.57 |
| ATTY | - |
| AUDIT | - |
| TOTAL | 38,966.86 |

## GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty ("Guaranty") is made as of May 20, 2019 by the undersigned, SANTIAGO RIVOIR, (the "Guarantor"), to and for the benefit of the LABORERS' PENSION FUND AND THE LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY (the "District Council") and any related ancillary Funds to which B.B. CONSTRUCTION ENTERPRISE, INC. is obligated to pay contributions to by virtue of its Agreement with the District Council and the Funds' respective Agreements and Declarations of Trust (collectively the "Funds").

WHEREAS, B.B. Construction Enterprise, Inc. ("Company") has agreed to pay a total of $38,966.86 which includes 12% interest over the course of twelve (12) months to the Funds in settlement of the delinquent contributions owed to the Funds and to be paid under the terms of an Installment Note ("Note").

WHEREAS, the Funds are unwilling to enter into the Note unless the guarantor executes this Guaranty; and

WHEREAS, the Guarantor has a financial interest in the Company and will be benefited by the Note;

NOW THEREFORE WHEREAS, in consideration of the foregoing, the Guarantor agrees as follows:

1. Guaranty of Payment and Indemnification. The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the twelve (12) month payment period including interest and liquidated damages for late or unpaid payments due on the Note; and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post-judgment bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantor hereunder (the obligations of Guarantor under this Paragraph 1 are collectively hereinafter referred to as the "Obligations"). The Guarantor also agrees to be personally liable for all benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs and including any amount revealed as due and owing in an audit even if the audit is conducted after the Note is paid in full.

2. Continuing Guaranty. This Guaranty shall be a continuing Guaranty, and shall not be discharged, impaired or affected by; (a) the existence or continuance of any obligation on the part of the Company with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that the Company or any of the party thereto may have to the performance or observance of any term, covenant or condition contained in the Note; (e) the existence or non-existence of the Company as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of the Company's Obligations) that Guarantor may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of the Company or any discharge or limitation of the disability of the Company, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantor.

3. Waivers. Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty. It is the intention of this Guaranty that Guarantor shall remain liable as principal, notwithstanding any act, omission or thing that might otherwise operate as a legal or equitable discharge of Guarantor, until all of the Company's obligations shall have been fully paid and performed.

1



EXHIBIT

C

tabbies®

4. <u>Subrogation.</u> Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the Guarantor(s) expressly waive with respect to the Company any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to set off or to any other rights that could accrue to a surety against a principal, to the Guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantor may have or hereafter acquire against the Company in connection with or as a result of Guarantor's execution, delivery and/or performance of this Guaranty or the Note. The Guarantor agrees that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other party (including any surety), either directly or as an attempted set off to any action commenced against the Guarantor by the Company (as borrower or in any other capacity) or any other person.

5. <u>Independent Obligations.</u> The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds from suing on the Note or from exercising any other rights; and the Funds shall note be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6. <u>Acceleration.</u> In the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds.

7. <u>Effect of Bankruptcy.</u> This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8. <u>Termination.</u> This Guaranty shall remain in full force and effect as to the Guarantor until all of the Company's Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations from time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9. <u>The Company's Financial Condition.</u> The guarantor assumes full responsibility for keeping fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

10. <u>Expenses.</u> The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's Obligations under the Note.

11. <u>Delay, Cumulative Remedies.</u> No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantor will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantor are cumulative.

12. <u>Binding Effect.</u> This guaranty shall incur to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantor and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantor, the obligations of such deceased Guarantor shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

2

13. Default. The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. The Guarantor agrees to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution upon such judgement, hereby ratify and confirming all that said attorney may do by virtue hereof.

14. Warranties. Guarantor makes to the Funds the following representations and warranties:

(a) Authorization. Guarantor has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder

(b) No Conflict. The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

(c) Litigation. There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantor at law of in equity or before or by governmental agency or instrumentality that involve any of the transactions herein contemplated, or the possibility of any judgment or liability that may result in any material and adverse change in the financial condition of any Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

(d) Enforceability. This guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

15. Notices. All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (I) delivered in person, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, or (IV) on the day on which Guarantor refuses delivery by mail or by private courier service, and (b) addressed as follows:

In Case of Guarantor

Santiago Rivoir
1821 W. 51st Street
Chicago, IL 60609

In Case of the Funds:

Collection Counsel
Ryan Liska
Laborers Pension & Welfare Fund
111 W Jackson Blvd
Suite 1415
Chicago IL 60604-3868

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided. The Funds will use their best efforts to send courtesy copies of notices provided hereunder to Guarantor. But the failure by the Funds to send courtesy copies to Guarantor's attorney shall not limit or restrict the Funds' rights under this Guaranty in any manner nor relieve Guarantor of any obligations under this guaranty.

3

16. **Additional Waivers.** Guarantor expressly and unconditionally waives, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief, (II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

17. **Severability.** If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

18. **Applicable Law; Venue.** This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and inter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue of any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. **Time is of the Essence.** Time is of the essence of this Guaranty as to the performance of the undersigned.

20. **Death of a Guarantor.** In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the three undersigned Guarantors has executed this instrument as of the date and year first above written.

_Santiago Rivoir_ (signature)

_____

Santiago Rivoir

Date: 5/23/19

4

**LABORERS' PENSION & WELFARE FUNDS**

REVISED AUDIT

EMPLOYER   BB CONSTRUCTION ENTERPRISE INC                    CODE   35727

FOLLOWING ARE THE FIGURES OWED BY THE ABOVE MENTIONED CONTRACTOR AS A RESULT OF THE AUDIT.

| | HOURS | WELFARE | RATE | RETIREE WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | DUES | LDCLMCC | RATE | IECA | RATE | LECET | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8-23-18-3-31-19 ADDITIONAL HOURS | | | | | | | | | | | | | | | | | |
| 8-23-18-3-31-19 | 24.00 | 243.60 | 10.15 | 114.00 | 4.75 | 301.68 | 12.57 | 17.28 | 0.72 | 39.35 | 4.08 | 0.17 | 2.88 | 0.12 | 1.68 | 0.07 | 724.55 |
| MEN NOT REPORTED | | | | | | | | | | | | | | | | | |
| SUBTOTAL | 24.00 | 243.60 | | 114.00 | | 301.68 | | 17.28 | | 39.35 | 4.08 | | 2.88 | | 1.68 | | 724.55 |
| 10% LIQUIDATED DAMAGES | | | | | | | | | | | | | | | | | |
| 20% LIQUIDATED DAMAGES | | 48.72 | | 22.80 | | 60.34 | | 3.46 | | 3.94 | 0.41 | | 0.29 | | 0.17 | | 135.81 |
| AUDIT COSTS | | 433.16 | | 420.42 | | 420.42 | | | | | | | | | | | 1,274.41 |
| ATTORNEY FEES | | | | | | | | | | | | | | | | | |
| ACCUM. LIQUIDATED DAMAGES | | | | | | | | | | | | | | | | | |
| ACCUM. INTEREST | | 17.63 | | 8.25 | | 21.84 | | 1.25 | | | 0.30 | | 0.21 | | 0.12 | | 49.60 |
| TOTAL DUE | | 743.11 | | 565.47 | | 804.28 | | 21.99 | | 43.29 | 4.79 | | 3.38 | | 1.97 | | 2,188.11 |
| AUDIT LIQUIDATED DAMAGE REDUCTION FROM 20% TO 10% IF THE AUDIT IS PAID WITHIN 30 DAYS FROM THE DATE OF THE AUDIT COVER LETTER DATED: | | (24.36) | | (11.40) | | (30.17) | | (1.73) | | | | | | | | | (67.86) |
| TOTAL DUE, IF PAID WITHIN 30 DAYS | | 718.75 | | 554.07 | | 774.11 | | 20.26 | | 43.29 | 4.79 | | 3.38 | | 1.97 | | 2,120.62 |



EXHIBIT D

No SSN Report

<u>BB Construction Enterprise, Inc.</u>
<u>1821 W 51st Street</u>
<u>Chicago, IL 60609</u>

<u>Employer Number:35727</u>

<u>August 23, 2018 to March 31, 2019</u>

1

DOES THE EMPLOYER HAVE A FRINGE BENEFIT BOND FOR THE CHICAGO LABORERS TRUST FUNDS?  ☐ YES        ☐ NO

IF YES, AND UNABLE TO PROVIDE WITH REPORT EXPLAIN WHY:        Not provided

AUDIT SITE (IF DIFFERENT FROM EMPLOYER'S ADDRESS):        Legacy Professionals, LLP

4 Westbrook Corporate Center, Suite 700

Westchester, IL 60154

ALL REQUIRED ACCOUNTING RECORDS WERE AVAILABLE WITH THE EXCEPTION OF:  N/A

BRIEFLY DESCRIBE THE NATURE OF THE DELINQUENCY, IF ANY:        Clerical errors as well as the employer reporting an owner

as a typical laborer instead of as an owner with an ISC agreement.

DID YOUR EXAMINATION UNCOVER ANYTHING SPECIAL OR UNUSUAL WHICH SHOULD BE BROUGHT TO

THE ATTENTION OF THE FUND COUNSEL OR OTHER INTERESTED PERSONS?

☑ YES        ☐ NO

IF YES, EXPLAIN:        The employer had a number of jobs carved out as exempt from coverage by the Funds when

they initially joined the union. This exempt work was paid out of the -7517 Chase account, and per the Fund, the employer

has a signed affidavit certifying this.

Per the Fund, Marcos Benitez is to be treated as if he is operating under an ISC agreement.

AUDITOR:        Tim Piatek

4

## Laborers' District Council
## Reconciliation of Differences Per Year

| Fiscal Year Ending | 5-31-2015 | 5-31-2016 | 5-31-2017 | 5-31-2018 | 5-31-2019 | 5-31-2020 | Total Due |
|---|---|---|---|---|---|---|---|
| Fringe Hours Not Reported | - | - | - | - | 624.00 | - | 624.00 |
| Dues Hours Not Reported | - | - | - | - | 424.00 | - | 424.00 |
| Dues Wages Not Reported | - | - | - | - | 18,279.68 | - | 18,279.68 |
| **Dollar Amount Due** | | | | | | | |
| Welfare (Active) | - | - | - | - | 6,333.60 | - | 6,333.60 |
| Welfare (Retiree) | - | - | - | - | 2,964.00 | - | 2,964.00 |
| Pension | - | - | - | - | 7,843.68 | - | 7,843.68 |
| Training | - | - | - | - | 449.28 | - | 449.28 |
| LECET | - | - | - | - | 29.68 | - | 29.68 |
| LDCLMCC | - | - | - | - | 72.08 | - | 72.08 |
| IECA | - | - | - | - | 50.88 | - | 50.88 |
| Working Dues | - | - | - | - | 685.49 | - | 685.49 |
| **Total** | $ - | $ - | $ - | $ - | $ 18,428.69 | $ - | $ 18,428.69 |

| | |
|---|---|
| Plus previous late charges assessed by Laborers' Pension and Welfare Funds | $ - |
| Plus previous underpayments incurred to Laborers' Pension and Welfare Funds | $ - |
| Plus previous underpayments incurred to Laborers' District Council Funds | $ - |
| Audit Fee | $ 1,274.00 |
| Total Amount Due | $ 19,702.69 |

| | | | |
|---|---|---|---|
| Employer Name: | BB Construction Enterprise, Inc. | Person Contacted: | Marisol Lopez |
| Employer #: | 35727 | Date of Contact: | March 29, 2019 |
| Date of Audit: | May 28, 2019 | Telephone: | (773) 436-9830 |
| Audit Period: | August 23, 2018 to March 31, 2019 | Auditor: | Tim Platek |

*See Summary Sheet*

5

**Laborers' District Council**
Schedule of Deficiencies

*Removed*

| Employer Name: | BB Construction Enterprise, Inc. | | Audit Period: | August 23, 2018 to March 31, 2019 |
|---|---|---|---|---|
| Employer Number: | 35727 | | Date of Audit: | May 28, 2019 |
| Agreement Type: | IECA | | Field Auditor: | Tim Piatek |

| SSN | Name | | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | 2018 | | | | | 2019 | | | | |
| | BENITEZ, MARCOS | Fringe Hours | | | - | 40.00 | | | 40.00 | 200.00 | 160.00 | 160.00 | | | 600.00 |
| | | Dues Hours | | | 80.00 | 40.00 | | | 40.00 | - | 120.00 | 120.00 | | | 100.00 |
| | | Dues Wages | | | 3,680.00 | 1,840.00 | | | 1,840.00 | - | 4,995.20 | 4,975.20 | | | 17,210.40 |
| | ASHFORD, MARIO | Fringe Hours | | | | 24.00 | | | | | | | | | 24.00 |
| | | Dues Hours | | | | | | | 24.00 | | | | | | 24.00 |
| | | Dues Wages | | | | - | | | 1,049.28 | | | | | | 1,049.28 |
| | | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | | | | | | | | | - |
| | | Dues Wages | | | | | | | | | | | | | - |
| | | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | | | | | | | | | - |
| | | Dues Wages | | | | | | | | | | | | | - |
| | | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | | | | | | | | | - |
| | | Dues Wages | | | | | | | | | | | | | - |
| | | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | | | | | | | | | - |
| | | Dues Wages | | | | | | | | | | | | | - |
| | | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | | | | | | | | | - |
| | | Dues Wages | | | | | | | | | | | | | - |
| | | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | | | | | | | | | - |
| | | Dues Wages | | | | | | | | | | | | | - |
| | | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | | | | | | | | | - |
| | | Dues Wages | | | | | | | | | | | | | - |

| | | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Total Fringe Hours | - | - | - | 64.00 | - | - | 40.00 | 200.00 | 160.00 | 160.00 | - | - | 624.00 |
| | Total Dues Hours | - | - | 80.00 | 40.00 | - | - | 64.00 | - | 120.00 | 120.00 | - | - | 424.00 |
| | Total Wages | - | - | 3,680.00 | 1,840.00 | - | - | 2,889.28 | - | 4,995.20 | 4,875.20 | - | - | 18,279.68 |

| | | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare (Active) | $10.15 | - | - | - | 649.60 | - | - | 406.00 | 2,030.00 | 1,624.00 | 1,624.00 | - | - | 6,333.60 |
| Welfare (Retiree) | $4.75 | - | - | - | 304.00 | - | - | 190.00 | 950.00 | 760.00 | 760.00 | - | - | 2,964.00 |
| Pension | $12.57 | - | - | - | 804.48 | - | - | 502.80 | 2,514.00 | 2,011.20 | 2,011.20 | - | - | 7,843.68 |
| Training | $0.72 | - | - | - | 46.08 | - | - | 28.80 | 144.00 | 115.20 | 115.20 | - | - | 449.28 |
| LECET | $0.07 | - | - | 5.60 | 2.80 | - | - | 4.48 | - | 8.40 | 8.40 | - | - | 29.68 |
| LDCLMCC | $0.17 | - | - | 13.60 | 6.80 | - | - | 10.88 | - | 20.40 | 20.40 | - | - | 72.08 |
| IECA | $0.12 | - | - | 9.60 | 4.80 | - | - | 7.68 | - | 14.40 | 14.40 | - | - | 50.88 |
| Working Dues | 3.75% | - | - | 138.00 | 69.00 | - | - | 108.35 | - | 187.32 | 182.82 | - | - | 685.49 |
| SHEET TOTAL | | - | - | 166.80 | 1,887.56 | - | - | 1,258.99 | 5,638.00 | 4,740.92 | 4,736.42 | - | - | 18,428.69 |

*See Summary Sheet*

6

**Ryan Liska**

| | |
|---|---|
| **From:** | Ryan Liska |
| **Sent:** | Thursday, October 17, 2019 9:56 AM |
| **To:** | 'BB Construction Enterprise' |
| **Cc:** | Joe Gilleran |
| **Subject:** | Audit and Note Pyaments |

Santiago:

On September 16, 2019, I sent you a copy of the fringe benefit and union dues compliance audit findings and a demand for payment. The audit findings were reduced to $2,120.62 on the condition the Company paid those findings within 30 days. The Funds have no record of those findings being paid. As a result the discount is no longer available and the amount due is $2,188.28.

Additionally, the Company has not paid its September and October 2019 installment note payments. Those payments collectively total $5,039.88. This email serves as a final demand for the Company to pay the audit findings and two (2) past due note payments. Please make a check payable to the "Laborers' Pension and Welfare Funds" in the amount of $7,228.16 and mail it to my attention at the address below by no later than October 31, 2019.

In the event full payment is not received the Funds will seek legal recourse.

Ryan



11/4/2019

# PAYMENT PLAN WORKSHEET

COMPANY **BB CONSTRUCTION ENTERPRISE INC**     CODE **35727**

PHONE# **773-436-9830**     CONTACT PERSON **SANTIAGO RIVIOIR**

NUMBER OF PMTS. **12**     FIELD REP **JG**

PMT PLAN COVERS THE MOS. OF **OCTOBER 2018-MARCH 2019**

TOTAL WEL & PENS **28,645.71**

LESS 20% DOWN **-**

EQUALS AMT FIN. **28,645.71**

| | | |
|---|---|---|
| PLUS ATTY. COSTS **-** | WEL PMT | 931.10 |
| | WEL RET PMT | 435.74 |
| PLUS AUDIT COSTS **-** | PENS PMT | 1,153.10 |
| PLUS NOTE INT. **1,593.57** | TOTAL | 2,519.94 |
| | # PAYMENTS | 12 |
| TOTAL W&P **30,239.28** <=======> | TOTAL W & P | 30,239.28 |

| | BEG BALANCE | PAY # | PAYMENT DUE DATE | SCH PMT | ACTUAL PAID | CHK# | DATE REC'D | SCH PMT | ACTUAL PAID | CHK# | DATE REC'D | SCH PMT | ACTUAL PAID | CHK# | DATE REC'D | END BALANCE OWED | ENTER "1" IF LATE | 20% LATE FEE (OWED) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DUES | 6,616.98 | XXXX | AT SIGNING | 6,616.98 | 6,616.98 | 1022 | 7/12/19 | | | | | XXXX | XXXX | XXXX | XXXX | | | |
| LMCC | 687.41 | XXXX | AT SIGNING | 687.41 | 687.41 | 1022 | 7/12/19 | | | | | XXXX | XXXX | XXXX | XXXX | - | | |
| CA/CA | 283.05 | XXXX | AT SIGNING | 283.05 | 283.05 | 1022 | 7/12/19 | | | | | XXXX | XXXX | XXXX | XXXX | - | | |
| TRAIN | 654.91 | XXXX | AT SIGNING | 654.91 | 654.91 | 1022 | 7/12/19 | | | | | XXXX | XXXX | XXXX | XXXX | - | | |
| LECET | 485.23 | XXXX | AT SIGNING | 485.23 | 485.23 | 1022 | 7/12/19 | | | | | XXXX | XXXX | XXXX | XXXX | - | | |
| CISCO | - | XXXX | AT SIGNING | - | | | | | | | | XXXX | XXXX | XXXX | XXXX | - | | |
| MARBA | | XXXX | AT SIGNING | - | | | | | | | | XXXX | XXXX | XXXX | XXXX | - | | |
| 20% | | XXXX | AT SIGNING | - | | | | | | | | XXXX | XXXX | XXXX | XXXX | - | | |

| | BEG BALANCE | PAY # | PAYMENT DUE DATE | WELFARE PMTS: | | | | WELFARE RETIREE PMTS: | | | | PENSION PMTS: | | | | END BALANCE OWED | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | SCH PMT | ACTUAL PAID | CHK# | DATE REC'D | SCH PMT | ACTUAL PAID | CHK# | DATE REC'D | SCH PMT | ACTUAL PAID | CHK# | DATE REC'D | | |
| W & P | 30,239.28 | 1 | 7/1/19 | 931.10 | 931.10 | 1023 | 7/30/19 | 435.74 | 435.74 | 1023 | 7/30/19 | 1,153.10 | 1,153.10 | 1023 | 7/30/19 | 27,719.34 | |
| | | 2 | 8/1/19 | 931.10 | 931.10 | 1024 | 9/9/19 | 435.74 | 435.74 | 1024 | 9/9/19 | 1,153.10 | 1,153.10 | 1024 | 9/9/19 | 25,199.40 | |
| | | 3 | 9/1/19 | 931.10 | | | | 435.74 | | | | 1,153.10 | | | | 25,199.40 | |
| | | 4 | 10/1/19 | 931.10 | | | | 435.74 | | | | 1,153.10 | | | | 25,199.40 | |
| | | 5 | 11/1/19 | 931.10 | | | | 435.74 | | | | 1,153.10 | | | | 25,199.40 | |
| | | 6 | 12/1/19 | 931.10 | | | | 435.74 | | | | 1,153.10 | | | | 25,199.40 | |
| | | 7 | 1/1/2020 | 931.10 | | | | 435.74 | | | | 1,153.10 | | | | 25,199.40 | |
| | | 8 | 2/1/2020 | 931.10 | | | | 435.74 | | | | 1,153.10 | | | | 25,199.40 | |
| | | 9 | 3/1/2020 | 931.10 | | | | 435.74 | | | | 1,153.10 | | | | 25,199.40 | |
| | | 10 | 4/1/2020 | 931.10 | | | | 435.74 | | | | 1,153.10 | | | | 25,199.40 | |
| | | 11 | 5/1/2020 | 931.10 | | | | 435.74 | | | | 1,153.10 | | | | 25,199.40 | |
| | | 12 | 6/1/2020 | 931.10 | | | | 435.74 | | | | 1,153.10 | | | | 25,199.40 | |
| TOTALS | 38,965.88 | | | 14,314.18 | 10,589.78 | | | 5,228.88 | 871.48 | | | 13,837.20 | 2,306.20 | | | 25,199.40 | |



EXHIBIT F